FILED

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, Plaintiff,<br><br>v.<br><br>NATIONAL MARINE FISHERIES SERVICE, and DR. REBECCA BLANK, Acting Secretary of Commerce, Defendants. | Case No. 8:13 CV221 T35 EAJ<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |

## INTRODUCTION

1. Plaintiff Center for Biological Diversity ("Center") brings this action against defendants National Marine Fisheries Service and Dr. Rebecca Blank, Acting Secretary of the Department of Commerce (collectively "Fisheries Service") for failing to comply with their mandatory duties under Section 4(f) of the Endangered Species Act ("ESA" or "Act"), 16 U.S.C. § 1533(f)(1), to develop and implement recovery plans for threatened elkhorn coral (*Acropora palmata*) and staghorn coral (*Acropora cervicornis*).

2. Section 4(f) of the ESA provides that the Fisheries Service "shall develop and implement plans for the conservation and survival of endangered species and threatened species." 16 U.S.C. § 1533(f)(1). Despite having been listed as threatened since 2006, elkhorn and staghorn corals do not have recovery plans that would benefit their conservation and survival. Accordingly, the Fisheries Service's failure to develop the plans is a direct violation of its mandatory duty under the ESA. This failure also violates the Fisheries Service's own policy that recovery plans be developed within 2.5 years of a final listing. *Endangered and Threatened Wildlife and Plants: Notice of Interagency Cooperative Policy on Recovery Plan Participation and Implementation under the Endangered Species Act*, 59 Fed. Reg. 34272 (July 1, 1994).

Complaint for declaratory and injunctive relief    1

3. This lawsuit seeks a declaratory judgment that the Fisheries Service's continued inaction is unlawful and an order requiring the agency to promptly publish final recovery plans for elkhorn and staghorn corals by a date certain.

## JURISDICTION

4. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. §§ 2201-2202 (declaratory and further relief), 16 U.S.C. §§ 1540(c) and (g)(1)(C) (action arising under the ESA and citizen suit provision).

5. The Center provided Defendants with at least 60 days written notice of the ESA violations alleged herein as required by 16 U.S.C. § 1540(g)(2)(c). The Fisheries Service has not remedied the violations, and accordingly, an actual controversy exists between the parties within the meaning of the Declaratory Judgment Act. 28 U.S.C. § 2201.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) and 16 U.S.C. § 1540(g)(3)(A).

## PARTIES

7. Plaintiff Center For Biological Diversity is a non-profit 501(c)(3) organization with over 39,000 active members and with offices across the country, including in St. Petersburg, Florida. The Center and its members are concerned with the conservation of imperiled species, including the elkhorn and staghorn corals, and the effective implementation of the ESA.

8. The Center for Biological Diversity has members who have visited areas where elkhorn and staghorn corals are known to occur. The Center's members use these areas for observation of the corals and other wildlife, research, nature photography, aesthetic enjoyment, recreational, educational, and other activities. The Center's members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the corals and their habitat. Those members have concrete plans to continue to visit and recreate in areas where they can observe the corals and their marine habitat.

9. The interests of the Center and its members have been and are being adversely affected by the Fisheries Service's failure to develop recovery plans for elkhorn and staghorn

corals. The agency's inaction is hurting the prospects of recovery for these imperiled species, as recovery plans for the corals would outline actions needed to conserve and recover the species. The Center's members' interests in viewing or otherwise enjoying the corals are being and will continue to be harmed as the species continue to suffer population declines. The Center's members also suffer procedural injury from the Fisheries Service's failure to finalize recovery plans for the coral, since the ESA provides for public comment and input on the draft recovery plan which the Fisheries Service must consider in the final recovery plan and its implementation.

10. Unless the requested relief is granted, the Center's interests and the interests of its members will continue to be adversely affected and injured by the agencies' failure to develop the recovery plans, as well as by the ongoing harm to the corals and their habitats in the absence of such recovery planning. The injuries described above are actual, concrete injuries presently suffered by the Center and its members and they will continue to occur unless this Court grants relief. These injuries are directly caused by the Fisheries Service's inaction. The relief sought herein, an order compelling completion of recovery plans for the corals, would redress these injuries. The Center and its members have no other adequate remedy at law.

11. Defendant National Marine Fisheries Service is a federal agency within the Department of Commerce charged with implementing the ESA. The Fisheries Service has the authority and ability to remedy the harms caused by the Fisheries Service's inactions and actions.

12. Defendant Dr. Rebecca Blank is the Acting Secretary of Commerce. The Secretary of Commerce is charged with administering and enforcing the ESA, including the mandatory duty to develop and implement recovery plans for listed species. She is sued in her official capacity.

## LEGAL BACKGROUND

13. The ESA declares that endangered and threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a)(3). Accordingly, the purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be

conserved, [and] to provide a program for the conservation of such endangered species and threatened species . . . ." 16 U.S.C. § 1531(b). The ESA defines "conservation" to mean "the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary." *Id.* § 1532(3). Accordingly, the ultimate goal of the ESA is not only to temporarily save endangered and threatened species from extinction, but also to recover these species to the point where they no longer need ESA protection.

14. As part of the statutory scheme to conserve endangered and threatened species, Section 4(f) the ESA provides that the Fisheries Service "shall develop and implement . . . recovery plans . . . for the conservation and survival of endangered species and threatened species listed pursuant to [the ESA], unless [the Fisheries Service] finds that such a plan will not promote the conservation of the species." 16 U.S.C. § 1533(f)(1).

15. Recovery is the process by which listed species and their ecosystems are restored and their future is safeguarded to the point that protections under the ESA are no longer needed. A variety of actions may be necessary to achieve the goal of recovery, however, without a plan to organize, coordinate and prioritize the many possible recovery actions, the effort may be inefficient or even ineffective. A recovery plan is one of the most important tools to ensure sound scientific and logistical decision-making throughout the recovery process. *Interim Endangered and Threatened Species Recovery Planning Guidance Version 1.3*, 2010, National Marine Fisheries Service, at 1.1-1, available at http://www.nmfs.noaa.gov/pr/pdfs/recovery/guidance.pdf.

16. In developing and implementing recovery plans, the Fisheries Service "shall, to the maximum extent practicable . . . give priority to those endangered species or threatened species, without regard to taxonomic classification, that are most likely to benefit from such plans, particularly those species that are, or may be, in conflict with construction or other development projects or other forms of economic activity." 16 U.S.C. § 1533(f)(1)(A).

17. In all such recovery plans, the Fisheries Service "shall, to the maximum extent practicable . . . incorporate in each plan—

(i) a description of such site-specific management actions as may be necessary to achieve the plan's goal for the conservation and survival of the species;

(ii) objective, measurable criteria which, when met, would result in a determination, in accordance with the provisions of this section, that the species be removed from the list; and

(iii) estimates of the time required and the cost to carry out those measures needed to achieve the plan's goal and to achieve intermediate steps toward that goal." 16 U.S.C. § 1533(f)(1)(B)(i)-(iii).

18. The ESA further provides that in developing and implementing recovery plans, the Fisheries Service may procure the services of appropriate public and private agencies and institutions, and other qualified persons. 16 U.S.C. § 1533(f)(2). It also requires that the Fisheries Service report to Congress every two years on the status of efforts to develop and implement recovery plans for all listed species and on the status of all species for which plans have been developed. 16 U.S.C. § 1533(f)(3). The Fisheries Service shall provide for public notice of, and comment on, any new or revised recovery plan prior to its final approval and shall consider all information presented during the public comment period prior to final approval of the new or revised recovery plan. 16 U.S.C. § 1533(f)(4). Finally, the Act provides that each federal agency, prior to implementation of a new or revised recovery plan, shall consider all information presented during the public comment period. 16 U.S.C. § 1533(f)(5).

19. Furthermore, the Fisheries Service has adopted a policy that it will develop a recovery plan in compliance with 16 U.S.C. § 1533(f) within 2.5 years of the final listing of an endangered or threatened species. *See Endangered and Threatened Wildlife and Plants: Notice of Interagency Cooperative Policy on Recovery Plan Participation and Implementation under the Endangered Species Act*, 59 Fed. Reg. 34272 (July 1, 1994).

20.    The Fisheries Service's failure to perform a non-discretionary duty under section 4 of the ESA is actionable under the ESA's citizen suit provision, 16 U.S.C. § 1540(g)(1)(C), and the Administrative Procedure Act ("APA") provides the standard of review for agency actions unlawfully withheld or unreasonably delayed. 5 U.S.C. § 706(1).

## FACTUAL BACKGROUND

### I.    Elkhorn and Staghorn Corals

21.    Elkhorn and staghorn corals were once the most abundant and important reef building corals of Florida and the greater Caribbean. Elkhorn and staghorn corals occur in United States waters off the coasts of Florida, Puerto Rico, the U.S. Virgin Islands and Navassa Island. Over just the last 30 years, these species have suffered an 80-98 percent decline throughout significant portions of their range, reducing coral cover and opening space on reefs at an unprecedented pace.

22.    Dense thickets of elkhorn and staghorn corals used to dominate Caribbean coral reefs in the 1970s. Now, colonies are small, isolated, and patchy. Because the populations are fragmented, the corals are unable to recruit new colonies because corals need to be in close proximity for reproduction.

23.    Habitat degradation and modification is a primary threat to these corals. Elkhorn and staghorn corals have suffered severe bleaching and mortalities due to increases in water temperature. The increasing acidity of seawater as a result of the oceans' uptake of carbon dioxide is also known to reduce the growth rate of corals and to impair the ability of elkhorn corals to populate a reef.

24.    Elkhorn and staghorn corals are also threatened by pollution and sedimentation, which further contributes to algae overgrowth of corals. Other threats include abrasion and breakage from contact with boats, anchors, and storms. Disease and predation also contributes to the decline of the corals.

25.    Elkhorn and staghorn corals can benefit from recovery measures. Recovery planning would set goals for coral recovery. A recovery plan would assess the key threats to the

species and determine appropriate management measures to reduce those threats and improve the likelihood of recovery.

26. A recovery plan for elkhorn and staghorn coral would describe actions considered necessary for the conservation of the species, would establish criteria for downlisting or delisting, and would estimate the time and cost for implementing the measures needed for recovery.

## II. Lack of Recovery Planning for the Elkhorn and Staghorn Corals

27. In 2004, the Center petitioned the Fisheries Service to protect elkhorn and staghorn corals under the ESA. On May 9, 2005, the Fisheries Service proposed listing the species, *Endangered and Threatened Species; Proposed Threatened Status for Elkhorn Coral and Staghorn Coral*, 70 Fed. Reg. 24359 (May 9, 2005).

28. In that proposed rule, the Fisheries Service noted that "[s]hould the proposed listing be made final, a recovery program would be implemented, and critical habitat may be designated," and that "[w]e believe that to be successful, protective regulations and recovery programs for elkhorn and staghorn corals will need to be developed in the context of conserving aquatic ecosystem health." *Id.* at 24363.

29. Exactly a year later, the Fisheries Service published a final rule listing the elkhorn and staghorn corals as threatened, *Endangered and Threatened Species: Final Listing Determinations for Elkhorn Coral and Staghorn Coral*, 71 Fed. Reg. 26852 (May 9, 2006), and in 2008, the Fisheries Service designated critical habitat. *Endangered and Threatened Species; Critical Habitat for Threatened Elkhorn and Staghorn Corals*, 73 Fed. Reg. 72210 (Nov. 26, 2008).

30. Elkhorn and staghorn corals have been listed for over six years but still lack recovery plans.

31. A recovery plan is a roadmap to how an endangered animal or plant species can eventually be secure from the risk of extinction and removed from the endangered species list. Recovery plans for elkhorn and staghorn corals would provide blueprints for actions that would

promote recovery and identify goals for their conservation. Timely development and implementation of recovery plans is critical to many specific recovery actions, including designing and funding required studies and securing cooperation from other federal, state, regional, and local governmental and private entities. Scientific studies show that species with recovery plans are much more likely to recover than species without.

32. The ESA provides that the Fisheries Service should give priority to those endangered species or threatened species, without regard to taxonomic classification, that are most likely to benefit from such plans, particularly those species that are, or may be, in conflict with construction or other development projects or other forms of economic activity. 16 U.S.C. § 1533(f)(1)(A). To this end, the Fisheries Service has assigned each listed species a number, ranging from a high of 1C to a low of 18. The criteria on which the recovery priority number is based are degree of threat, recovery potential, taxonomic distinctiveness, and presence of an actual or imminent conflict between the species and development activities. A species' rank may be elevated by adding a "C" designation to its numerical rank to indicate that it is, or may be, in conflict with construction or other development projects, or other forms of economic activity. Species with a high priority rank (1, 1C, 2, 2C, 3, 3C) are those that are the most threatened and have the highest potential for recovery. Species with a low rank (16, 17, 18) are the least threatened and have low recovery potentials. *See, Endangered and Threatened Species Listing and Recovery Priority Guidelines*, 48 Fed. Reg. 43098 (Sept. 21, 1983).

33. The elkhorn and staghorn corals are assigned a recovery priority number of 3, which reflects high potential for recovery and threats that are imminent and high in magnitude.

34. By letter dated March 15, 2012, the Center provided the Fisheries Service with notice of the violations of law alleged in this Complaint and of the Center's intention to sue if the Fisheries Service continued to fail to develop and implement recovery plans for elkhorn and staghorn corals. The Fisheries Service has not corrected the violations of law identified in the notice.

## CAUSE OF ACTION

### Violation of ESA, 16 U.S.C. § 1533

35. All allegations set forth above in this Complaint are incorporated herein by reference.

36. The Fisheries Service has violated its mandatory, non-discretionary duty found in Section 4(f) of the ESA, 16 U.S.C. § 1533(f), to either develop and implement recovery plans for elkhorn and staghorn corals, or make a finding that such plans will not promote conservation of the species.

37. This violation of law is actionable under the ESA's citizen suit provision. 16 U.S.C. § 1540(g)(1)(C).

## REQUEST FOR RELIEF

WHEREFORE, the Center requests that the Court enter judgment providing the following relief:

(1) A declaratory judgment that the Fisheries Service has violated its mandatory duty under Section 4(f) of the ESA, 16 U.S.C. § 1533(f)(1), failing to develop recovery plans for elkhorn and staghorn corals;

(2) An injunctive order requiring the Fisheries Service to comply with Section 4(f) of the ESA, 16 U.S.C. § 1533(f)(1), by publishing a recovery plan for the elkhorn and staghorn corals by a prompt date certain;

(3) An order awarding the Center its attorneys' fees and costs in this action as provided by the ESA, 16 U.S.C. § 1540(g)(4); and

(4) Such other and further relief as the Court deems just and proper.

Respectfully submitted this 23rd day of January, 2013,

Jaclyn Lopez, Trial Counsel
FL Bar 96445
Center for Biological Diversity

P.O. Box 2155
St. Petersburg, FL 33731
Tel: (727) 490-9190
Fax: (415) 436-9683
jlopez@biologicaldiversity.org

Miyoko Sakashita, Trial Counsel
*pro hac vice* pending
Center for Biological Diversity
351 California Street, Suite 600
San Francisco, CA 94104
Tel: (415) 436-9682
Fax: (415) 436-9683
miyoko@biologicaldiversity.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 23, 2013, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/Jaclyn Lopez
Jaclyn Lopez, Trial Counsel
FL Bar 96445
Center for Biological Diversity
P.O. Box 2155
St. Petersburg, FL 33731
Tel: (727) 490-9190
Fax: (415) 436-9683
jlopez@biologicaldiversity.org